## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A CRIMINAL COMPLAINT

I, Geoffrey J. Kelly, being duly sworn, state that the following is true to the best of my knowledge, information, and belief:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed for twenty-six years. Prior to my employment with the FBI, I served for three years as a police officer with the Metropolitan Transportation Authority Police Department in New York City. Since February 1996, I have been assigned to the Boston Division of the FBI. I am currently assigned to the Lakeville Resident Agency in Lakeville, Massachusetts, where my primary duty is the investigation of violent criminal offenses, to include bank robbery offenses. Prior to my current assignment, I worked for approximately eight years on the Boston FBI's Bank Robbery/Violent Crimes Task Force. Throughout my career, I have participated in hundreds of bank robbery and other violent crime investigations. During the course of these investigations, I have executed search and arrest warrants, utilized informants, interviewed witnesses, and conducted surveillances.

2. I am aware that Title 18, United States Code, Section 2113(a) makes it a crime for anyone to use force and violence, or intimidation, to take or attempt to take, from the person or

presence of another, any property or money or any other thing of value belonging to, or in the care custody, control, management, or possession of any federally insured bank.

3.  I make this affidavit in support of a criminal complaint and arrest warrant charging Nathon Ribeiro-Neves ("Ribeiro"), DOB: XX/XX/2000, with the November 8, 2021, robbery of a branch of the Eastern Bank, located at 45 Main Street in Lakeville, Massachusetts. On the date of this robbery, Eastern Bank was insured by the Federal Deposit Insurance Corporation. The facts stated herein are based on my own personal involvement with this investigation, as well as from information provided to me by other law enforcement officers involved in the investigation. In submitting this affidavit, I have not included each and every fact known to me about this investigation; rather, I am only submitting enough evidence necessary to establish the requisite probable cause.

**FACTS ESTABLISHING PROBABLE CAUSE**

**THE EASTERN BANK ROBBERY ON NOVEMBER 8, 2021**

4.  On November 8, 2021 at approximately 3:09 pm, an individual entered a branch of the Eastern Bank located at 45 Main Street in Lakeville, Massachusetts. The individual entered the bank and approached the tellers' station. Once at the tellers' station the individual handed a teller two pieces of

paper. The first piece of paper was an Eastern Bank withdrawal slip written out for "$25,000" with the numbers "666" also written on the slip. The second piece of paper was a white lined piece of paper bearing the following text, which was written in red and blue ink:

> *$25,000 ALL HUNDREDS – NO TRACED BILLS OR SILENT ALARM OR INK. *NO POLICE CALL UNTIL 20 MINUTES AFTER. EVERYONE IN BUILDING IS CURSED WITH BLACK MAGIC & VOODOO. BOMBING WILL ALSO HAPPEN IF NO PAYMENT IS MADE!!! *IF ALL IS SMOOTH – NOTHING IS TO WORRY *STAY QUEIT !!! 109 666[1]

5.   The teller advised the individual ("the robber") that she did not have $25,000, at which time the robber verbally demanded $10,000. The teller advised the robber that she did not have $10,000, at which time the robber became agitated and stated words to the effect of, "Get me something." The teller then handed the robber $2,500 in U.S. currency from her cash dispenser. The robber then took the money, leaving both demand notes behind, exited the bank, and took a left towards the rear of the building.

### LAW ENFORCEMENT RESPONSE

6.   Within minutes of the robbery, officers from the Lakeville Police Department, the Massachusetts State Police, the

---

[1] The words "IF ALL IS SMOOTH – NOTHING IS TO WORRY" and the numbers "666" were circled.

Plymouth County Sheriff's Department, FBI agents, and a Westwood Police K-9 officer responded to the Eastern Bank and initiated a robbery investigation and interviewed the teller who interacted with the robber. That teller initially described the robber as a Black male, shorter than 6'0" in height, wearing a blue hooded sweatshirt, with the hood pulled up over his head, a mask and dark jeans. The teller noted that the robber had one hand inside the sweatshirt's front pocket and that his other hand appeared to be ungloved. Upon further inquiry during a later interview, the teller stated that she was unsure if the robber was a male or female as the robber spoke with a low tone and a muffled voice.

    7.    Bank surveillance cameras were functioning and operating on the date of the robbery. The cameras captured images of the robber entering the bank, standing near the check writing counter, interacting with the teller, and then exiting the bank. A review of the bank surveillance video depicted the robber as a Black individual wearing a dark hooded sweatshirt with the hood up, dark pants, dark shoes, and a dark colored surgical face mask. The robber did not appear to be wearing gloves.

    8.    A post-robbery audit determined that the robber had taken $2,500 in U.S. currency during the robbery.

9. A canvass of the area was conducted, and the K-9 unit tracked to an abandoned property located at 51 Main Street in Lakeville, which is adjacent to the building housing the Eastern Bank. The K-9 lost the track at the rear of the abandoned building, where officers observed fresh tire tracks on the pavement.

10. An officer from the Plymouth County Bureau of Criminal Investigation ("BCI") responded to the bank and processed the scene. The BCI Officer took possession of the two demand notes, which were submitted to the Plymouth County Laboratory for further analysis.

11. The BCI Officer further processed the scene for the possible presence of latent prints. Eight print lifts were recovered: seven were lifted from the check writing counter, and one was lifted from the tellers' station. These lifts were photographed to scale, packaged, and secured as evidence.

**IDENTIFICATION OF THE ROBBER**

12. The eight fingerprint lifts discussed above were submitted to the BCI Latent Analysis Laboratory. Five of the eight fingerprint lifts were entered into the Automated Fingerprint Identification System ("AFIS"). However, no identification could be made. The other three fingerprint lifts

lacked sufficient detail for comparison and were not entered into the AFIS system.

13. At the BCI Latent Analysis Laboratory the two demand notes were processed for additional latent fingerprint lifts. Five fingerprint lifts were recovered from the robbery demand note. One print from the robbery demand note was entered into AFIS, from which a positive identification could be made for an individual identified as Neite Rebero.[2] The remaining four print lifts lacked sufficient detail for a comparison.

14. Four fingerprints were recovered from the withdrawal slip. One of the fingerprint lifts was entered into AFIS, from which a positive identification could be made for an individual identified as Nathon Ribeiro-Neves.[3] The remaining three prints lacked sufficient detail for a comparison.

15. The prints taken from the robbery demand note discussed above in Paragraph 13, and the prints taken from the withdrawal slip discussed above in Paragraph 14 were manually

---

[2] According to records maintained by the NCIC, Neite Rebero, with an FBI# xxxxxPPAK, is a known alias of an individual known as Nathon Ribeiro-Neves.

[3] According to records maintained by the NCIC Nathon Ribeiro-Neves, with an FBI# xxxxxPPAK, is a known alias of an individual known as Neite Robero.

compared and found to be from the same person, Nathon Ribeiro-Neves, FBI # xxxxxPPAK.

16.  On November 15, 2021, an individual later identified as Nathon Ribeiro-Neves, FBI # xxxxxPPAK, was arrested and charged with the robbery of the Cornerstone Bank located at 230 Pleasant Street, Worcester, MA.  Following Ribeiro-Neves arrest he was fingerprinted and booked. Ribeiro-Neves' fingerprints matched the prints on file for Nathon Ribeiro-Neves, FBI # xxxxxPPAK discussed above in Paragraphs 13-15.

17.  I have reviewed records maintained by the Massachusetts Registry of Motor Vehicles, from NCIC, from the Massachusetts Bureau of Probation and from various police reports relative to Ribeiro-Neves. In these records Ribeiro-Neves is listed as a Black male, between 5'10"- 6' in height and in many of the reports has used the name Neite Rebero as an alias.

**THIS SECTION LEFT INTENTIONALLY BLANK**

**CONCLUSION**

18. Based on the foregoing, I submit there is probable cause to believe that on November 8, 2021, Nathon Ribeiro-Neves, by force and violence and by intimidation took from the person and presence of another property or money or any other thing of value belonging to, or in the care custody, control, management, or possession of the Eastern Bank, a bank insured by the Federal Deposit Insurance Corporation, in violation of Title 18 U.S.C. § 2113(a).

Sworn to under the pains and penalties of perjury, telephonically in accordance with Fed. R. Crim. P. 4.1 on February ___. 2022.

_____
GEOFFREY J. KELLY
Special Agent
FEDERAL BUREAU OF INVESTIGATION

Subscribed and sworn to telephonically in accordance with Fed. R. Crim. P. 4.1 on this Feb 15, 2022 of February 2022.

_____
HONORABLE JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE